UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ORGANOGENESIS INC., )
)
            Plaintiff, )
  vs. )    Case No.: 2:16–cv–00989–GMN–CWH
)
FAYTHE NESS, )    **ORDER**
)
            Defendant. )

Pending before the Court is the Motion for Preliminary Injunction (ECF No. 9) filed by Plaintiff Organogenesis Inc. ("Plaintiff") against Defendant Faythe Ness ("Defendant"). Defendant filed a Response (ECF No. 19), and Plaintiff filed a Reply (ECF No. 22).

### I.   BACKGROUND

Defendant is a former employee of Plaintiff, a medical products company that specializes in regenerative medical products. (Compl. ¶ 5, 13, ECF No. 1). In 2015, she was hired by Plaintiff as a Tissue Regeneration Specialist ("TRS") with a primary job responsibility to market and sell Plaintiff's products. (*Id.* ¶¶ 9–10, 13). As a condition of her employment, she entered into a non-compete agreement (the "Agreement") with Plaintiff, which prohibited her from participating in any business which is competitive with Plaintiff's business, both during her employment and for two years thereafter. (*Id.* ¶ 16). Specifically, the Agreement states that Defendant may not

> participate within the United States, Canada, Western Europe or Japan as an owner, stockholder, option holder, manager, agent, consultant, director, lender of money, guarantor, salesperson or employee of any other business, firm or corporation which is, or by the action of Employee would become, competitive with the Business of the Company nor attempt to interfere with or entice away any customer,

licensee or employee or consultant of the Company.

(Agreement, Ex. B to Adamson Decl., ECF No. 9-2). Furthermore, the Agreement defines "Business of the Company as the

> research, development, biological engineering work, technical and clinical feasibility investigations (conducted or contemplated), governmental approvals (obtained or applied for) and the products and services that may be manufactured, fabricated, packaged, sold, distributed, licensed, offered or contemplated to be offered for sale or license by the Company in the field of tissue regeneration, including living and non-living tissue and organ replacement and repair constructs, related to the fields of wound repair, bio-surgery, and bio-aesthetics, including but not limited to: (a) living dermal equivalents, living epidermal equivalents, living skin equivalents, wound coverings and wound management products; (b) living connective tissue constructs and biomaterial constructs for the repair and/or replacement tendon, ligament, body-wall, cardiac tissue, vasculature, bone, cartilage, neural tissue; (c) injectable matrix compositions, injectable cell compositions, topical compositions containing cytokines, growth factors, and other cell-communication compounds; (d) natural and synthesized collagen compositions, and natural and synthesized extracellular matrix compositions; (e) cell culture media for culturing cells and living constructs; (f) stem cells [and] (g) cell-delivery constructs.

(*Id.*).

On April 1, 2016, Defendant informed Plaintiff of her intention to resign from her TRS position. (*Id.* ¶ 25). She is currently an employee of MiMedx, one of Plaintiff's competitors. (*Id.* ¶ 35).

Plaintiff alleges that, shortly before Defendant's resignation, Defendant began informing Plaintiff's current Nevada-based customers of her intent to join MiMedx. (*Id.* ¶¶ 30–31) Defendant allegedly continued contacting these customers, despite written correspondence from Plaintiff ordering her to cease and desist. (*Id.* ¶¶ 34–36).

Plaintiff's Complaint, filed on May 2, 2016, alleges breach of contract and states that Plaintiff will incur "immediate and irreparable injury" if Defendant is allowed to continue her competitive activities. (*Id.* ¶¶ 37–43).  On May 3, 2016, Plaintiff filed an Emergency Motion for Temporary Restraining Order to prevent Defendant from participating in her former sales territory under Plaintiff's employ as a salesperson or employee of any other business which is competitive with Plaintiff or from interfering with or enticing away any of Plaintiff's customer within her former sales territory. (Emergency Mot. for TRO 21:4–12, ECF No. 8).  That same day, the Court granted the Emergency Motion for Temporary Restraining Order and scheduled a hearing on the instant Motion for May 23, 2016. (Order, ECF No. 10).

## II.     LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  A Court may issue a preliminary injunction only if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.  Finally, "[i]n deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

/ / /

/ / /

## III. DISCUSSION

### A. Likelihood of Success on the Merits

#### 1. *Choice of Law*

The Agreement contains a choice-of-law provision stating that it is governed by Massachusetts law. (Agreement, ECF No. 9-2). Defendant argues that, despite this provision, the Agreement should be governed by Nevada law. (Resp. 6:21–10:18, ECF No. 19).

"The first step in interpreting [a choice-of-law] clause is to apply the correct choice-of-law rules." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). "In determining the enforceability of a choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). Nevada generally follows the Restatement (Second) of Conflict of Laws in answering choice-of-law questions that arise in contracts. *Progressive Gulf Ins. Co. v. Faehnrich*, 752 F.3d 746, 750–51 (9th Cir. 2014). "So long as 'the parties acted in good faith and not to evade the law of the real situs of the contract,' Nevada's choice-of-law principles permit parties 'within broad limits to choose the law that will determine the validity and effect of their contract.'" *Id.* at 751 (quoting *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Investors*, 603 P.2d 270, 273 (Nev. 1979)).

However, the situs specified in the contract must have "a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum." *Sievers*, 603 P.2d at 273; *see also Siy v. CashCall, Inc.*, No. 2:13-cv-00953-PAL, 2014 WL 37879, at *8 (D. Nev. Jan. 6, 2014) (upholding California choice-of-law provision in employment contract because California "meets the substantial relationship test, and . . . the agreement is not contrary to the public policy of Nevada"). To

determine whether a given situs satisfies the substantial relationship test, Nevada considers the following factors from section 188 of the Restatement: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the parties' domicile, residence, nationality, place of incorporation, and place of business. *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 790 (Nev. 1990). A court applies the law of the state having the more substantial relation with the transaction unless public policy concerns outweigh that relation. *Id.*

Here, there is no evidence that, in signing a contract governed by Massachusetts law, the parties acted in bad faith to avoid the law of any particular state. Given that Plaintiff maintains its principal place of business in Massachusetts, and conducts business in a number of other states, it is reasonable that Plaintiff would include a Massachusetts choice-of-law provision in the Agreement. (*See* Compl. ¶¶ 1, 8, ECF No. 1). Further, the factors from section 188 of the Restatement do not compel a determination that Nevada has a more substantial relation to this action than Massachusetts. These factors do not weigh so heavily in favor of Nevada as to preclude the application of Massachusetts law. *See Sotirakis*, 787 P.2d at 790. While the parties executed the Agreement in Nevada, the place of performance and location of the subject matter of the Agreement are both Massachusetts and Nevada, as Defendant's sales activity in her assigned region of Nevada presumably had an effect on Plaintiff's business in Massachusetts. (*See* Resp. 2:24–3:6).

Additionally, Defendant argues that Massachusetts law is contrary to "Nevada's strong public policy for protection of a person's livelihood and prohibiting unreasonable restrictions on free trade," as codified at NRS 613.200. (Resp. 7:25–8:1). Specifically, NRS 613.200(4) provides that a non-competition agreement constitutes an unlawful

restraint of trade unless the agreement is (1) reasonable in its scope and duration and (2) supported by valuable consideration. However, Massachusetts law similarly provides that a non-competition agreement will only be enforced so long as it is "reasonable in time, location, and other respects." *Struck v. Plymouth Mortg. Co.*, 605 N.E.2d 296, 298 (Mass. 1993). Thus, the Court finds that Massachusetts law is not contrary to Nevada public policy.

Accordingly, this Court will apply Massachusetts law to the Agreement because Nevada gives parties wide latitude in choosing the law they want to apply to their contracts, Defendant assented to a choice of Massachusetts law by signing the Agreement, Massachusetts reasonably has a "substantial relation with the transaction," and the Agreement is not contrary to the public policy of Nevada.

### 2. Merits

The *Winter* test states that in order to show the necessity of injunctive relief, the plaintiff must first prove a likelihood of success on the merits. 555 U.S. at 20. Here, the Court recognizes that Plaintiff can likely show that Defendant violated the Agreement.

The Agreement requires Defendant to refrain from participating, for two years, in any business which is competitive with Plaintiff's business. (Agreement ¶ 2). Plaintiff claims that Defendant violated the Agreement because she began working for a direct competitor of Plaintiff, began contacting Plaintiff's customers, and "is selling products on behalf of MiMedx in her former Organogenesis sales territory that are directly competitive to the Products, and calling upon the same customers on behalf of MiMedx that she had called upon while working for Organogenesis." (Compl. ¶¶ 26, 29, 36). Plaintiff supports its claim with a declaration of Yvonne Irigoyen-Kirby, a Regional Sales Manager of Plaintiff. (Irigoyen-Kirby Decl. ¶¶ 23–25, 27, ECF No. 9-1).

In Massachusetts, non–competition agreements are enforceable only if they are

"necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest." *Boulanger v. Dunkin' Donuts Inc.*, 815 N.E.2d 572, 577 (Mass. 2004).  Courts will not enforce non-competition agreements meant solely to protect employers from run-of-the-mill business competition. *Marine Contractors Co., Inc. v. Hurley*, 310 N.E.2d 915, 920 (Mass. 1974).  But the protection of "trade secrets, other confidential information, [and] . . . the good will the employer has acquired through dealings with his customers" constitute legitimate business interests. *Id.*; *see also Alexander & Alexander, Inc. v. Danahy*, 488 N.E.2d 22, 28 (Mass. App. Ct. 1986).

Defendant asserts that the Agreement does not protect a legitimate business interest. (Resp. 12:22–14:11).  On the other hand, Plaintiff asserts that the Agreement is necessary to protect its customer goodwill and confidential information. (Prelim. Inj. 14:1–15:24).  Specifically, Plaintiff explains that its customer goodwill is protectable because Defendant was Plaintiff's "primary point of contact with its customers in its Las Vegas territory and was responsible for building relationships with customers on [Plaintiff]'s behalf." (*Id.* 14:7–9).  Plaintiff further explains that, in the course of her employment, Defendant obtained confidential information regarding Plaintiff's customers, sales plans, sales data, and marketing strategies. (*Id.* 14:23–15:13 (explaining that Defendant attended Plaintiff's national sales meeting where she received confidential and proprietary information concerning Plaintiff's 2016 marketing strategy for its entire product portfolio, including Plaintiff's strategy for differentiating itself from its competitors like MiMedx); Irigoyen-Kirby Decl. ¶¶ 17–19).  The Court finds that the Agreement protects legitimate business interests—customer goodwill and confidential information—of the Plaintiff.

Moreover, the Agreement is reasonably limited in time.  It imposes a two-year

restriction, and Massachusetts courts have frequently found longer time restrictions to be reasonable. *See, e.g.*, *Blackwell v. E.M. Helides, Jr., Inc.*, 331 N.E.2d 54, 56 (Mass. 1975) (finding three-year restriction to be reasonable); *Marine Contractors Co.*, 310 N.E.2d at 921 (finding that non-compete lasting less than three years was not excessive); *All Stainless, Inc. v. Colby*, 308 N.E.2d 481, 486 (Mass. 1974) (finding two-year restriction to be reasonable).

As to the geographic scope of the Agreement, the Court finds, and Plaintiff concedes, that the Agreement, as written, is too broad. However, "[i]f the covenant is too broad in . . . space . . . , it will be enforced only to the extent that is reasonable and to the extent that it is severable for the purposes of enforcement." *All Stainless*, 308 N.E.2d at 485; *see also Metro. Ice Co. v. Ducas*, 196 N.E. 856, 858 (Mass. 1935) ("[I]f the restrictive agreement would involve unreasonable restrictions in this commonwealth the provision is nevertheless enforceable for so much of the performance as would be a reasonable restraint."); *Whiting Milk Cos. v. O'Connell*, 179 N.E. 169, 170 (Mass. 1931) ("A contract in restraint of trade in which the territory is unreasonably extensive may be divisible as to space and enforced in equity within a reasonable area."). Rather than enforce the Agreement to its most expansive geographical scope, Plaintiff "simply seeks an injunction prohibiting [Defendant] from working for a competitor in her former [ ] sales territory." (Prelim. Inj. 16:26–28 n.3). The Court finds such a restraint on the geographic scope of the Agreement is reasonable. Accordingly, because the Court finds that the Agreement is enforceable and Plaintiff can likely show that Defendant violated the Agreement, Plaintiff has shown a likelihood of success on the merits.

  **B.**  **Likelihood of Irreparable Harm in the Absence of Preliminary Relief**

To succeed on the second prong of the *Winter* test, the plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22 (emphasis

in original).  In the Ninth Circuit, "[t]hose seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm." *Herb Reed Enters., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013).  A presumption that irreparable harm is likely is not sufficient to justify the granting of a preliminary injunction. *See id.* at 1242.

Irreparable harm cannot be "economic injury alone . . . because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Tele. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  However, the Ninth Circuit has recognized "intangible injuries," which constitute irreparable harm. *Id.* (indicating damage to goodwill as such injury in a case regarding a non-compete clause of a contract).

Based upon Irigoyen-Kirby's declaration, Defendant has already begun calling Plaintiff's customers to inform them that she is now working for Plaintiff's direct competitor, MiMedx. (Irigoyen-Kirby Decl. ¶¶ 24–25, 27).  Moreover, despite instructing Defendant to not talk to Plaintiff's customers, Defendant has continued to do so. (*Id.*). The Court finds that such action by Defendant demonstrates that irreparable harm is likely in the absence of an injunction.

### C.     The Balance of Equities

Defendant asserts that she will suffer a significantly greater hardship if she is prohibited from being employed by MiMedx in Las Vegas. (Resp. 16:23–25).  While the Court is sympathetic to the hardship of Defendant that will result from the injunction, the Court cannot find that the balance of equities tips in her favor.  Defendant willingly signed the Agreement upon her employment with Plaintiff.  Moreover, as discussed above, Plaintiff has an interest in protecting its customer goodwill and confidential information.  Furthermore, the Court has narrowly tailored the injunction solely to enjoin Plaintiff from employment with MiMedx in her former sales territory under her employ

with Plaintiff.

### D. Public Interest

Before granting an injunction the Court must determine that an injunction is in the public's interest. *Winter*, 555 U.S. at 24. The right to contract is fundamental and includes the privilege of selecting those who will be employed by a company and under what terms that employment will be. An injunction in this instance protects the public's interest in the integrity and enforceability of employment contracts. Therefore, the Court finds that the public's interest favors an injunction in this instance.

## IV. CONCLUSION

Because Plaintiff Organogenesis has met its burden demonstrating the *Winter* factors, the Court hereby grants Plaintiff's Motion for Preliminary Injunction.

**IT IS HEREBY ORDERED** that Plaintiff Organogenesis's Motion for Preliminary Injunction (ECF No. 9) is **GRANTED**, as follows:

1. Defendant Ness shall not, within her former Organogenesis sales territory, participate as a salesperson or employee of any other business, firm or corporation which is, or by her action would become, competitive with the Business of Organogenesis, including MiMedx; and

2. Defendant Ness, on her own or in concert with others, shall not attempt to interfere with or entice away any Organogenesis customer within her former Organogenesis sales territory.

For the purposes of this order, the "Business of Organogenesis" shall mean the research, development, biological engineering work, technical and clinical feasibility investigations (conducted or contemplated), governmental approvals (obtained or applied for) and the products and services that may be manufactured, fabricated, packaged, sold, distributed, licensed, offered or contemplated to be offered for sale or license by

Organogenesis in the field of tissue regeneration, including living and non-living tissue and organ replacement and repair constructs, related to the fields of wound repair, bio-surgery, and bio-aesthetics, including but not limited to: (a) living dermal equivalents, living epidermal equivalents, living skin equivalents, wound coverings and wound management products; (b) living connective tissue constructs and biomaterial constructs for the repair and/or replacement tendon, ligament, body-wall, cardiac tissue, vasculature, bone, cartilage, neural tissue; (c) injectable matrix compositions, injectable cell compositions, topical compositions containing cytokines, growth factors, and other cellcommunication compounds; (d) natural and synthesized collagen compositions, and natural and synthesized extracellular matrix compositions; (e) cell culture media for culturing cells and living constructs; (f) stem cells; and (g) cell-delivery constructs.

Defendant Ness's former Organogenesis sales territory shall mean the municipalities and the associated zip codes set forth in the attached Exhibit A.

This Order shall remain in place pending a full determination of Plaintiff's causes of action on the merits or upon further order of this Court.

DATED this __23__ day of May, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

Exhibit A

| ZIP Code | City | State Name | ST Abbrev |
|---|---|---|---|
| 84710 | ALTON | UTAH | UT |
| 84714 | BERYL | UTAH | UT |
| 84719 | BRIAN HEAD | UTAH | UT |
| 84720 | CEDAR CITY | UTAH | UT |
| 84721 | CEDAR CITY | UTAH | UT |
| 84722 | CENTRAL | UTAH | UT |
| 84725 | ENTERPRISE | UTAH | UT |
| 84729 | GLENDALE | UTAH | UT |
| 84733 | GUNLOCK | UTAH | UT |
| 84735 | HATCH | UTAH | UT |
| 84737 | HURRICANE | UTAH | UT |
| 84738 | IVINS | UTAH | UT |
| 84742 | KANARRAVILLE | UTAH | UT |
| 84745 | LA VERKIN | UTAH | UT |
| 84746 | LEEDS | UTAH | UT |
| 84753 | MODENA | UTAH | UT |
| 84755 | MOUNT CARMEL | UTAH | UT |
| 84756 | NEWCASTLE | UTAH | UT |
| 84757 | NEW HARMONY | UTAH | UT |
| 84758 | ORDERVILLE | UTAH | UT |
| 84759 | PANGUITCH | UTAH | UT |
| 84760 | PARAGONAH | UTAH | UT |
| 84761 | PAROWAN | UTAH | UT |
| 84762 | DUCK CREEK VILLAGE | UTAH | UT |
| 84763 | ROCKVILLE | UTAH | UT |
| 84765 | SANTA CLARA | UTAH | UT |
| 84767 | SPRINGDALE | UTAH | UT |
| 84770 | SAINT GEORGE | UTAH | UT |
| 84771 | SAINT GEORGE | UTAH | UT |
| 84772 | SUMMIT | UTAH | UT |
| 84774 | TOQUERVILLE | UTAH | UT |
| 84779 | VIRGIN | UTAH | UT |
| 84780 | WASHINGTON | UTAH | UT |
| 84781 | PINE VALLEY | UTAH | UT |
| 84782 | VEYO | UTAH | UT |
| 84783 | DAMMERON VALLEY | UTAH | UT |
| 84784 | HILDALE | UTAH | UT |
| 84790 | SAINT GEORGE | UTAH | UT |
| 84791 | SAINT GEORGE | UTAH | UT |
| 85325 | BOUSE | ARIZONA | AZ |
| 85328 | CIBOLA | ARIZONA | AZ |
| 85334 | EHRENBERG | ARIZONA | AZ |
| 85344 | PARKER | ARIZONA | AZ |
| 85346 | QUARTZSITE | ARIZONA | AZ |
| 85348 | SALOME | ARIZONA | AZ |
| 85357 | WENDEN | ARIZONA | AZ |

| ZIP | City | State | ST |
|---|---|---|---|
| 85359 | QUARTZSITE | ARIZONA | AZ |
| 85360 | WIKIEUP | ARIZONA | AZ |
| 85371 | POSTON | ARIZONA | AZ |
| 86401 | KINGMAN | ARIZONA | AZ |
| 86402 | KINGMAN | ARIZONA | AZ |
| 86403 | LAKE HAVASU CITY | ARIZONA | AZ |
| 86404 | LAKE HAVASU CITY | ARIZONA | AZ |
| 86405 | LAKE HAVASU CITY | ARIZONA | AZ |
| 86406 | LAKE HAVASU CITY | ARIZONA | AZ |
| 86409 | KINGMAN | ARIZONA | AZ |
| 86412 | HUALAPAI | ARIZONA | AZ |
| 86413 | GOLDEN VALLEY | ARIZONA | AZ |
| 86426 | FORT MOHAVE | ARIZONA | AZ |
| 86427 | FORT MOHAVE | ARIZONA | AZ |
| 86429 | BULLHEAD CITY | ARIZONA | AZ |
| 86430 | BULLHEAD CITY | ARIZONA | AZ |
| 86431 | CHLORIDE | ARIZONA | AZ |
| 86433 | OATMAN | ARIZONA | AZ |
| 86436 | TOPOCK | ARIZONA | AZ |
| 86437 | VALENTINE | ARIZONA | AZ |
| 86438 | YUCCA | ARIZONA | AZ |
| 86439 | BULLHEAD CITY | ARIZONA | AZ |
| 86440 | MOHAVE VALLEY | ARIZONA | AZ |
| 86441 | DOLAN SPRINGS | ARIZONA | AZ |
| 86442 | BULLHEAD CITY | ARIZONA | AZ |
| 86443 | TEMPLE BAR MARINA | ARIZONA | AZ |
| 86444 | MEADVIEW | ARIZONA | AZ |
| 86445 | WILLOW BEACH | ARIZONA | AZ |
| 86446 | MOHAVE VALLEY | ARIZONA | AZ |
| 88901 | THE LAKES | NEVADA | NV |
| 88905 | THE LAKES | NEVADA | NV |
| 89001 | ALAMO | NEVADA | NV |
| 89002 | HENDERSON | NEVADA | NV |
| 89003 | BEATTY | NEVADA | NV |
| 89004 | BLUE DIAMOND | NEVADA | NV |
| 89005 | BOULDER CITY | NEVADA | NV |
| 89006 | BOULDER CITY | NEVADA | NV |
| 89007 | BUNKERVILLE | NEVADA | NV |
| 89008 | CALIENTE | NEVADA | NV |
| 89009 | HENDERSON | NEVADA | NV |
| 89010 | DYER | NEVADA | NV |
| 89011 | HENDERSON | NEVADA | NV |
| 89012 | HENDERSON | NEVADA | NV |
| 89013 | GOLDFIELD | NEVADA | NV |
| 89014 | HENDERSON | NEVADA | NV |
| 89015 | HENDERSON | NEVADA | NV |
| 89016 | HENDERSON | NEVADA | NV |

| | | | |
|---|---|---|---|
| 89017 | HIKO | NEVADA | NV |
| 89018 | INDIAN SPRINGS | NEVADA | NV |
| 89019 | JEAN | NEVADA | NV |
| 89020 | AMARGOSA VALLEY | NEVADA | NV |
| 89021 | LOGANDALE | NEVADA | NV |
| 89022 | MANHATTAN | NEVADA | NV |
| 89023 | MERCURY | NEVADA | NV |
| 89024 | MESQUITE | NEVADA | NV |
| 89025 | MOAPA | NEVADA | NV |
| 89026 | JEAN | NEVADA | NV |
| 89027 | MESQUITE | NEVADA | NV |
| 89028 | LAUGHLIN | NEVADA | NV |
| 89029 | LAUGHLIN | NEVADA | NV |
| 89030 | NORTH LAS VEGAS | NEVADA | NV |
| 89031 | NORTH LAS VEGAS | NEVADA | NV |
| 89032 | NORTH LAS VEGAS | NEVADA | NV |
| 89033 | NORTH LAS VEGAS | NEVADA | NV |
| 89034 | MESQUITE | NEVADA | NV |
| 89036 | NORTH LAS VEGAS | NEVADA | NV |
| 89037 | COYOTE SPRINGS | NEVADA | NV |
| 89039 | CAL NEV ARI | NEVADA | NV |
| 89040 | OVERTON | NEVADA | NV |
| 89041 | PAHRUMP | NEVADA | NV |
| 89042 | PANACA | NEVADA | NV |
| 89043 | PIOCHE | NEVADA | NV |
| 89044 | HENDERSON | NEVADA | NV |
| 89045 | ROUND MOUNTAIN | NEVADA | NV |
| 89046 | SEARCHLIGHT | NEVADA | NV |
| 89047 | SILVERPEAK | NEVADA | NV |
| 89048 | PAHRUMP | NEVADA | NV |
| 89049 | TONOPAH | NEVADA | NV |
| 89052 | HENDERSON | NEVADA | NV |
| 89053 | HENDERSON | NEVADA | NV |
| 89054 | LAS VEGAS | NEVADA | NV |
| 89060 | PAHRUMP | NEVADA | NV |
| 89061 | PAHRUMP | NEVADA | NV |
| 89067 | COYOTE SPRINGS | NEVADA | NV |
| 89070 | INDIAN SPRINGS | NEVADA | NV |
| 89074 | HENDERSON | NEVADA | NV |
| 89077 | HENDERSON | NEVADA | NV |
| 89081 | NORTH LAS VEGAS | NEVADA | NV |
| 89084 | NORTH LAS VEGAS | NEVADA | NV |
| 89085 | NORTH LAS VEGAS | NEVADA | NV |
| 89086 | NORTH LAS VEGAS | NEVADA | NV |
| 89087 | NORTH LAS VEGAS | NEVADA | NV |
| 89101 | LAS VEGAS | NEVADA | NV |
| 89102 | LAS VEGAS | NEVADA | NV |

| | | | |
|---|---|---|---|
| 89103 | LAS VEGAS | NEVADA | NV |
| 89104 | LAS VEGAS | NEVADA | NV |
| 89105 | LAS VEGAS | NEVADA | NV |
| 89106 | LAS VEGAS | NEVADA | NV |
| 89107 | LAS VEGAS | NEVADA | NV |
| 89108 | LAS VEGAS | NEVADA | NV |
| 89109 | LAS VEGAS | NEVADA | NV |
| 89110 | LAS VEGAS | NEVADA | NV |
| 89111 | LAS VEGAS | NEVADA | NV |
| 89112 | LAS VEGAS | NEVADA | NV |
| 89113 | LAS VEGAS | NEVADA | NV |
| 89114 | LAS VEGAS | NEVADA | NV |
| 89115 | LAS VEGAS | NEVADA | NV |
| 89116 | LAS VEGAS | NEVADA | NV |
| 89117 | LAS VEGAS | NEVADA | NV |
| 89118 | LAS VEGAS | NEVADA | NV |
| 89119 | LAS VEGAS | NEVADA | NV |
| 89120 | LAS VEGAS | NEVADA | NV |
| 89121 | LAS VEGAS | NEVADA | NV |
| 89122 | LAS VEGAS | NEVADA | NV |
| 89123 | LAS VEGAS | NEVADA | NV |
| 89124 | LAS VEGAS | NEVADA | NV |
| 89125 | LAS VEGAS | NEVADA | NV |
| 89126 | LAS VEGAS | NEVADA | NV |
| 89127 | LAS VEGAS | NEVADA | NV |
| 89128 | LAS VEGAS | NEVADA | NV |
| 89129 | LAS VEGAS | NEVADA | NV |
| 89130 | LAS VEGAS | NEVADA | NV |
| 89131 | LAS VEGAS | NEVADA | NV |
| 89132 | LAS VEGAS | NEVADA | NV |
| 89133 | LAS VEGAS | NEVADA | NV |
| 89134 | LAS VEGAS | NEVADA | NV |
| 89135 | LAS VEGAS | NEVADA | NV |
| 89136 | LAS VEGAS | NEVADA | NV |
| 89137 | LAS VEGAS | NEVADA | NV |
| 89138 | LAS VEGAS | NEVADA | NV |
| 89139 | LAS VEGAS | NEVADA | NV |
| 89140 | LAS VEGAS | NEVADA | NV |
| 89141 | LAS VEGAS | NEVADA | NV |
| 89142 | LAS VEGAS | NEVADA | NV |
| 89143 | LAS VEGAS | NEVADA | NV |
| 89144 | LAS VEGAS | NEVADA | NV |
| 89145 | LAS VEGAS | NEVADA | NV |
| 89146 | LAS VEGAS | NEVADA | NV |
| 89147 | LAS VEGAS | NEVADA | NV |
| 89148 | LAS VEGAS | NEVADA | NV |
| 89149 | LAS VEGAS | NEVADA | NV |

| | | | |
|---|---|---|---|
| 89150 | LAS VEGAS | NEVADA | NV |
| 89151 | LAS VEGAS | NEVADA | NV |
| 89152 | LAS VEGAS | NEVADA | NV |
| 89153 | LAS VEGAS | NEVADA | NV |
| 89154 | LAS VEGAS | NEVADA | NV |
| 89155 | LAS VEGAS | NEVADA | NV |
| 89156 | LAS VEGAS | NEVADA | NV |
| 89157 | LAS VEGAS | NEVADA | NV |
| 89158 | LAS VEGAS | NEVADA | NV |
| 89159 | LAS VEGAS | NEVADA | NV |
| 89160 | LAS VEGAS | NEVADA | NV |
| 89161 | LAS VEGAS | NEVADA | NV |
| 89162 | LAS VEGAS | NEVADA | NV |
| 89163 | LAS VEGAS | NEVADA | NV |
| 89164 | LAS VEGAS | NEVADA | NV |
| 89165 | LAS VEGAS | NEVADA | NV |
| 89166 | LAS VEGAS | NEVADA | NV |
| 89169 | LAS VEGAS | NEVADA | NV |
| 89170 | LAS VEGAS | NEVADA | NV |
| 89173 | LAS VEGAS | NEVADA | NV |
| 89177 | LAS VEGAS | NEVADA | NV |
| 89178 | LAS VEGAS | NEVADA | NV |
| 89179 | LAS VEGAS | NEVADA | NV |
| 89180 | LAS VEGAS | NEVADA | NV |
| 89183 | LAS VEGAS | NEVADA | NV |
| 89185 | LAS VEGAS | NEVADA | NV |
| 89191 | NELLIS AFB | NEVADA | NV |
| 89193 | LAS VEGAS | NEVADA | NV |
| 89195 | LAS VEGAS | NEVADA | NV |
| 89199 | LAS VEGAS | NEVADA | NV |
| 89301 | ELY | NEVADA | NV |
| 89310 | AUSTIN | NEVADA | NV |
| 89311 | BAKER | NEVADA | NV |
| 89314 | DUCKWATER | NEVADA | NV |
| 89315 | EAST ELY | NEVADA | NV |
| 89316 | EUREKA | NEVADA | NV |
| 89317 | LUND | NEVADA | NV |
| 89318 | MC GILL | NEVADA | NV |
| 89319 | RUTH | NEVADA | NV |
| 89404 | DENIO | NEVADA | NV |
| 89405 | EMPIRE | NEVADA | NV |
| 89406 | FALLON | NEVADA | NV |
| 89407 | FALLON | NEVADA | NV |
| 89408 | FERNLEY | NEVADA | NV |
| 89409 | GABBS | NEVADA | NV |
| 89412 | GERLACH | NEVADA | NV |
| 89414 | GOLCONDA | NEVADA | NV |

| | | | |
|---|---|---|---|
| 89415 | HAWTHORNE | NEVADA | NV |
| 89418 | IMLAY | NEVADA | NV |
| 89419 | LOVELOCK | NEVADA | NV |
| 89420 | LUNING | NEVADA | NV |
| 89421 | MC DERMITT | NEVADA | NV |
| 89422 | MINA | NEVADA | NV |
| 89424 | NIXON | NEVADA | NV |
| 89425 | OROVADA | NEVADA | NV |
| 89438 | VALMY | NEVADA | NV |
| 89442 | WADSWORTH | NEVADA | NV |
| 89496 | FALLON | NEVADA | NV |
| 89801 | ELKO | NEVADA | NV |
| 89802 | ELKO | NEVADA | NV |
| 89803 | ELKO | NEVADA | NV |
| 89815 | SPRING CREEK | NEVADA | NV |
| 89820 | BATTLE MOUNTAIN | NEVADA | NV |
| 89821 | CRESCENT VALLEY | NEVADA | NV |
| 89822 | CARLIN | NEVADA | NV |
| 89823 | DEETH | NEVADA | NV |
| 89824 | HALLECK | NEVADA | NV |
| 89828 | LAMOILLE | NEVADA | NV |
| 89830 | MONTELLO | NEVADA | NV |
| 89833 | RUBY VALLEY | NEVADA | NV |
| 89834 | TUSCARORA | NEVADA | NV |
| 89835 | WELLS | NEVADA | NV |
| 89883 | WEST WENDOVER | NEVADA | NV |